IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JUAN P. CHAVEZ, § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:18-cv-2781-K (BT) |
| § | |
| SCOTT RUDES, ET AL., § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Juan P. Chavez filed this *pro se* civil action which the District Court referred to the undersigned Unites States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The Court granted Chavez leave to proceed *in forma pauperis* and withheld issuing process pending judicial screening. Having screened the complaint, the Court recommends that the complaint be dismissed.

I.

Chavez brings this civil action against Booker T. Washington High School for the Performing and Visual Arts (Booker T); Scott M. Rudes, principal of Booker T; the Dallas Independent School District (DISD); DISD employee, Larry Schnitzer; the Arts Schools Network; DISD Superintendent Michael Hinojosa; DISD police officers Clayton Wilson and Marcus Morris; John Doe Baylor Hospital employees; John Doe paramedics; John Doe Lew Sterrett Justice Center employees; and John and Jane Does 1-9. In his Complaint, and other documents

1

filed with the Court,[1] he alleges Defendants violated RICO, 18 U.S.C. § 1964, and the Hobbs Act, 18 U.S.C. § 1951, coerced him into involuntary servitude in violation of 18 U.S.C. § 1584, violated his civil rights under 42 U.S.C. § 1983, and committed fraud, assault and battery, and defamation. Specifically, Chavez claims that on October 18, 2016, he was teaching a class at Booker T when Principal Rudes called the police and ordered the responding officers to break Chavez's hand. Chavez claims officers complied with this order by breaking a bone in his hand, and that the officers unlawfully arrested him. He states paramedics arrived to treat his hand, and they took him to Baylor Hospital. He claims the paramedics and employees at Baylor Hospital made his hand injury worse. He states that after receiving medical care at Baylor Hospital, he was transported to the Lew Sterrett Justice Center where Defendants conspired to "further deprive him of his rights" and that he was tortured, which killed him, but that he was revived. (ECF No. 21 at 2.)  He states he later was evaluated at a hospital in California, where a doctor reported he was mentally ill and suffering from psychosis.

Chavez also claims that Principal Rudes and DISD Officers Morris and Wilson stole his violin. (ECF No. 30 at 2.) He states, "[t]hough an innocent non-

---

[1] Chavez filed his complaint on October 18, 2018. He filed amended complaints on November 19, 2018, February 1, 2019, and April 11, 2019. On July 25, 2019, the Court sent Chavez a Magistrate Judge's Questionnaire seeking information regarding his claims. On November 17, 2019, he filed his responses to the Magistrate Judge's Questionnaire. In his responses, he also requested leave to file another amended complaint

2

party returned plaintiff's violin by sneaking it into another innocent non-parties (sic) home it was ultimately stolen again buy (sic) a paramedic who beat plaintiff over the head with a computer at the central district of California courthouse." (*Id.* at 5.) He claims officers in California sent "him to Twin Towers to force inject him for 96 days with antihistamines, among other drugs, which removed his ability to communicate for months and kept him walking in circles involuntarily for months after he was released." (*Id.*)

He further claims Principal Rudes is part of a gang of intellectual property thieves and that Booker T intentionally deprived him and other students of knowledge regarding their intellectual property. He alleges Rudes and Schnitzer defamed him, and that Booker T coerced him into involuntary servitude. By his lawsuit, Chavez seeks unspecified injunctive relief and money damages.

## II.

A district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Further, to state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead

3

those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Twombly*, 550 U.S. at 555.

### III.

A.  Hobbs Act Claims

Chavez alleges Defendants violated the Hobbs Act, 18 U.S.C. § 1951, when: (1) Principal Rudes defamed Chavez's Johnny Arco[2] character and asked Chavez to work without pay; (2) Rudes and DISD Officers Wilson and Morris stole his violin; and (3) the Arts Schools Network attempted to transfer a copyright owned by Chavez to its Network. The Hobbs Act, however, is a criminal statute that does not provide a private right of action. *See Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (holding that the Hobbs Act prohibits interference with commerce by threats of violence but does not create a private right of action); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019) (same). Chavez's claims under the Hobbs Act should be dismissed.

---

[2] Chavez has used the name "Johnny Arco" in his artistic work.

4

## B. § 1983 Claims

Chavez alleges Principal Rudes and Officers Wilson and Morris violated his rights under § 1983. He claims Rudes ordered officers to break his hand and that the officers complied with this order and broke a metacarpal bone in his hand. He also claims Wilson and Morris unlawfully arrested him and failed to read him his *Miranda* rights.

Chavez has failed to plead a facially plausible claim that Officers Wilson and Morris broke his hand because Rudes ordered them to do so. In response to the Magistrate Judge's Questionnaire ordering Chavez to state all the facts supporting this claim, Chavez responded:

> Without secure Intellectual Structure and Intellectual Property, Plaintiff could never intentionally co-create sound physical property and structure . . . which is how Rudes was able to orchestrate, and effectively, comminute his 2nd metacarpal, steal his violin, and then have one of his employees, an innocent non-party, place the violin in the home of other innocent non-parties (without the homeowner's knowledge).

(ECF No. 30 at 2.) (ellipses contained in the original). Chavez's allegations fail to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp.*, 550 U.S. at 570. This claim should be dismissed.

Chavez also claims Officers Wilson and Morris unlawfully arrested him. He submitted a police report regarding the arrest that states:

> Officer Wilson #181 was informed by the Principal Dr. Rudes that a person by the alias name "Johnny Arco" was trespassing and that he wanted him escorted off school

5

property[.] Officer Wilson located an unidentified man inside room #230 sitting with the music teacher while he was teaching class. I walked into the class and asked the unidentified man his name and he told me why do you need to know my name and sit (sic) back down. Mr. Schnizter walked down the hallway to room #230 and informed me that this is the person who is trespassing identifying him as Johnny Arco. Officer Wilson asked Arco to come out of the room and he refused several times to come out of the room. The music teacher Rodriguez told him to cooperate and he finally step (sic) out of the room. Officer Wilson told Arco that the (sic) he was trespassing and the Principal want (sic) him to leave the building. Arco became angry telling me I am not going to leave the building and I'm going to go back to the classroom to teach the class. Officer Wilson then called for a cover unit because he would not following (sic) my instructions. Officer Wilson finally got Arco to walk outside but he still refused to leave the property. Officer Morris arrived on campus and ask (sic) the unidentified man for his identification but he did not have identification except for a College Identification card. He asked what is his name and date of birth and the unidentified man refused to give it to him. Officer Morris told him to placed his hands behind his back and he did not comply. He became very belligerent and combative. Officer Morris and I conducted an open hand control with handcuffing using take down to gain control after resisting Officer's verbal commands. Sgt. Strange arrived on campus and ran the subject for warrants. He had two Class 'C' warrants and dispatcher Osborne confirmed the warrants. I went back inside and interviewed the music teacher Rodriguez. He told Officer Wilson that his real name was [Chavez], and that Johnny Arco was his artistic name. [Chavez] complained to Sgt. Strange that is (sic) hand was injured and Sgt. Strange called the dispatch to have paramedics come out to the scene and treat [Chavez]. Dallas Fire Rescue Unit 18 arrived on campus at 3:34 p.m. and transported [Chavez] to Baylor Hospital for further evaluation. The medical staff at Baylor examined him and diagnosed him with a broken left hand. Sgt. Strange and I transported [Chavez] to 1402

6

> Seegar for processing and then transported him to the Dallas County Jail. [Chavez] was issued a trespass warning.

(ECF No. 21 at 14-15.) Although Chavez claims his arrest was unlawful, he has made no factual showing that the arrest warrants were invalid. Further, as to Chavez's claim that officers did not to read him his *Miranda* rights, he has failed to state how he was damaged by this alleged failure. Chavez's § 1983 claims should be dismissed.

### C.     Assault and Battery Claims

Chavez claims Principal Rudes ordered Officers Wilson and Morris to break his hand, and that paramedics and Baylor Hospital employees made the injury worse. He also claims that Lew Sterrett Justice Center employees conspired with Defendants to torture him, which caused his death, but he was revived. As discussed above, Chavez's allegations that Rudes ordered Officers Wilson and Morris to break his hand fails to state a claim for relief that is plausible on its face.

To support his claim that Baylor Hospital employees made his hand injury worse, Chavez states: "The x-rays show that the injury is worse in the second x-ray compared to the first x-ray. The x-ray technician screamed at the top of her lungs when she saw the second x-ray, 'he made it worse!'" (ECF No. 30 at 5.) To support his claim that the paramedics made his injury worse, he states: "Plaintiff told Sergeant strange (sic) that he did not want to go to the hospital because of the way the paramedics were speaking to him. The paramedics were speaking to Plaintiff

7

with accusations, aggression, and telling him he didn't have the right to speak. It was clear that the paramedics were not there to help the plaintiff. Sergeant strange (sic) and the paramedics said plaintiff didn't have a choice, that he had to go with the paramedics." (ECF No. 30 at 5.) Chavez's allegations fail establish a reasonable inference that the Defendants are liable for assault. *See Ashcroft,* 556 U.S. 662, 678.

To support his claims of torture, Chavez states, "Rudes and the officers and the hospital then conspired with Lew Sterrett Justice Center officials to further deprive [Chavez] of his rights . . .. The hand comminution and torture ultimately killed [Chavez] who was revived by Dezman Lehman." (ECF No. 30 at 5.) Chavez's claim of torture and death describe irrational or wholly incredible claims against Defendants. These claims should be dismissed.

## D.     Fraud Claims

Chavez raises fraud claims against Booker T and Officers Wilson and Morris. He states Booker T intentionally deprived him and other students of knowledge regarding their intellectual property and punished people who raised these issues. He claims Officers Wilson and Morris made fraudulent trespass claims.

In Texas, the elements of common law fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker

8

made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 218 (5th Cir. 2018) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). Chavez's claim is also subject to a heightened pleading standard under Fed. R. Civ. P. 9(b), which requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1193).

  Chavez's claims against Booker T do not meet the heightened pleading standard required for fraud. He does not identify the statements that were made, who made the statements, when and where the statements were made, or explain why the statements were fraudulent. He therefore fails to provide a sufficient factual basis for these fraud claims.

  Chavez's fraud claims against Officers Wilson and Morris also fail to state a claim. Although Chavez has alleged Wilson and Morris made false statements in the police report accusing him of trespassing, Chavez has failed to state how he

9

acted in reliance on any allegedly fraudulent statement. Chavez's claims should be dismissed.

### E.     Involuntary Servitude Claims

Plaintiff alleges Booker T subjected him to involuntary servitude in violation of 18 U.S.C. § 1584 when it coerced him to teach students, perform music, and arrange, compose, and publish sheet music "without pay, under some form of coercion other than his financial needs, usually pass/fail grades or under a false belief of needing "exposure" and/or "credit," and false promises of promotion and security." (ECF No. 21 at 5.)

Under 18 U.S.C. § 1584(a), involuntary servitude occurs when an individual "knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term[.]" Involuntary servitude is defined as "a condition of servitude induced by means of—(A) any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or (B) the abuse or threatened abuse of the legal process." 22 U.S.C. § 7102(8).

Chavez does not state when the alleged involuntary servitude occurred, but it appears to arise from his time as student at Booker T. Chavez's allegations, however, fail to establish a plausible claim that any school requirements imposed by Booker T violated § 1584. Chavez's claim is frivolous and should be dismissed.

10

## F.     RICO Claims

Chavez argues Principal Rudes, Booker T, and the Arts Schools Network violated RICO. He states:

> Defendant Rudes wishes to promote himself in the Arts Schools Network and Apollo Global Management gangs, among others . . .. He has done so by securing young artists' copyright to the Art Schools Network and Apollo Management gangsters and directorates. Having officers deprive rights of educators who are enabling the students with knowledge of intellectual property and intellectual structures and imposing civil disabilities on them.

(ECF No. 30 at 2.) He also claims Booker T coerced a student into entering contracts against her will and never informed her "that she was being filmed in a reality series." (*Id.* at 6.) He claims Rudes "ordered the comminution of [Chavez's] hand in order to enhance and further his position with Apollo Global Management LLC, and other members of the gang of intellectual property thieves they are associated with." (ECF No. 21 at 5.)

Under RICO, a plaintiff may bring a private cause of action against "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 201 (5th Cir. 2015). Section 1961(1) defines "racketeering activity," in part, as "any act which is indictable" under several specified sections of the United States Code or state law.

Chavez fails to identify the racketeering activity or the required enterprise. To the extent the alleged racketeering activity is based on fraud, he has failed to

11

meet the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b). His allegations also describe irrational or wholly incredible claims against Defendants. Chavez's RICO claims should be dismissed.

### G. Leave to Amend

In Chavez's responses to the Magistrate Judge's Questionnaire, he seeks leave to file another amended complaint. (ECF No. 30 at 1.) Ordinarily, a *pro se* plaintiff should be granted the opportunity to amend his complaint prior to dismissal but leave to amend is not required when the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Here, Chavez has filed three amended complaints and has supplemented his claims by filing several responses to the Magistrate Judge's Questionnaire. Chavez has therefore already pleaded his "best case," and leave to amend should be denied.

### IV.

Chavez's Complaint should be summarily dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2), and his request for leave to amend should be denied.

Signed December 26, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

13